UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UMERO SALDANA,<br><br>          Petitioner,<br><br>    v.<br><br>DAVID E. ORTIZ,<br><br>          Respondent. | Civil Action<br>No. 20-6268 (CPO)<br><br>**OPINION** |

**O'HEARN, District Judge.**

Petitioner is a federal prisoner, and he is proceeding *pro se* with a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (ECF No. 1.) Respondent filed an Answer opposing relief (ECF No. 4), and Petitioner filed a Reply, (ECF No. 5). For the reasons set forth below, the Court will deny the Petition.

## I.  BACKGROUND

This case arises from a disciplinary hearing during Petitioner's incarceration at FCI Fort Dix, in Fort Dix, New Jersey. On June 16, 2019, staff issued an incident report charging Petitioner with possession of a hazardous tool, in violation of Bureau of Prisons ("BOP") Disciplinary Code 108.[1] (ECF No. 4-1, at 16.) The report describes the incident as follows:

> Description of Incident (Date: 6-16-19 Time: 11:41am Staff became aware of incident) On June 17 [sic], 2019, at approximately 11:48am this investigator viewed unauthorized pictures of inmate Saldana, Umero V Jr, Reg. NO. 16192-089. These pictures were taken with a cell phone in the secured confines of FCI Ft. Dix. It's

---

[1] Code 108 prohibits: "Possession, manufacture, introduction, or loss of a hazardous tool (tools most likely to be used in an escape or escape attempt or to serve as weapons capable of doing serious bodily harm to others; or those hazardous to institutional security or personal safety; *e.g.*, hack-saw blade, body armor, maps, handmade rope, or other escape paraphernalia, portable telephone, pager, or other electronic device)." 28 C.F.R. § 541.3 (Table 1).

> apparent by the background of the pictures that inmate Saldana was not in the approved areas where photos are allowed. These findings were noted due to red piping sprinkler system on the ceiling, grey in color bunk beds, grey in color lockers and white in color walls. In these picture[s] inmate Saldana is wearing the following a brown T-shirt, grey in color sweat pants, white in color tank top, a necklace made of red in color beads and a watch with what appears to be a black in color leather band. In one of the pictures inmate Saldana took a selfie of himself and the others he is willingly posing for the pictures to be taken. Photos are only to be taken in the Visiting or Recreation area by Bureau approved cameras. Based on the physical evidence it is concluded that inmate Saldana possessed and used a cellular phone while incarcerated at F.C.I. Ft. Dix to have unauthorized contact with the public.

(*Id.* ¶ 11.)[2]

Later that same day, staff delivered a copy of the incident report to Petitioner and advised him of his rights. (*Id.* ¶¶ 23–24.) Petitioner stated that he understood his rights, declined to make a statement, and did not request any witnesses. (*Id.*) At the end of the investigation, the investigating officer referred the incident report to the Unit Discipline Committee ("UDC") for an initial hearing.

Two days later, on June 18, 2019, the UDC held an initial hearing and referred the incident report to a Discipline Hearing Officer ("DHO"), due to the seriousness of the offense. Officials advised Petitioner of his rights before the DHO, and he acknowledged receipt of those rights. (ECF No. 4-1, at 22, 24.) Petitioner indicated that he did not wish to have a staff representative or to call any witnesses. (*Id.* at 22)

The DHO held a hearing on June 28, 2019. (*Id.* at 27.) At the hearing, Petitioner again waived his right to a staff representative and to call witnesses and stated, "I am not guilty, the

---

[2] A "selfie" is defined as: "an image that includes oneself (often with another person or as part of a group) and is taken by oneself using a digital camera especially for posting on social networks." *Selfie*, Dictionary.com, https://www.dictionary.com/browse/selfie (last visited April 20, 2022).

cellphone wasn't mine." (*Id*. at 26.)  In total, the DHO considered: (1) the incident report; (2) various photographs of Petitioner; and (3) Petitioner's testimony. (*Id*. at 26–27, 30.)

Ultimately, the DHO found Petitioner guilty of possessing a cellphone, in violation of Code 108. (*Id*. at 26–27.)  The DHO held:

> Your due process rights were read, and reviewed with you by the DHO, at the time of your hearing. You stated you understood your rights, and had no documentary evidence to present. You did not request the services of a staff representative. You did not request any witnesses provide testimony on your behalf.
>
> Based on some facts/the greater weight of evidence the DHO concluded the prohibited act of Possession of a Hazardous Tool was committed. The DHO based his decision on the following evidence:
>
> The DHO based this finding upon the reporting officer's written statement; "On June 17, 2019, at approximately 11:48am this investigator viewed unauthorized pictures of inmate Saldana, Umero V Jr, Reg. NO. 16192-089. These pictures were taken with a cell phone in the secured confines of FCI Ft. Dix. It's apparent by the background of the pictures that inmate Saldana was not in the approved areas where photos are allowed. These findings were noted due to red piping sprinkler system on the ceiling, grey in color bunk beds, grey in color lockers and white in color walls. In these picture inmate Saldana is wearing the following a brown T-shirt, grey in color sweat pants, white in color tank top, a necklace made of red in color beads and a watch with what appears to be a black in color leather band. In one of the pictures inmate Saldana took a selfie of himself and the others he is willingly posing for the pictures to be taken. Photos are only to be taken in the Visiting or Recreation area by Bureau approved cameras. Based on the physical evidence it is concluded that inmate Saldana possessed and used a cellular phone while incarcerated at F.C.I. Ft. Dix to have unauthorized contact with the public."
>
> In addition, the DHO considered your testimony during the DHO hearing in which you deny the incident report was true. You stated, "I didn't have a phone." You deny being in possession of a cell phone while at FCI Fort Dix as described in section 11 by the reporting staff member. You were unable to provide the DHO with any significant/reliable witnesses or evidence to corroborate your claim of not possessing the cell phone.

> In addition, the DHO considered the photographs taken by a cell phone of you in the secure confines of Fort Dix, New Jersey. Specifically, in one of the photos you were observed wearing the following a brown T-shirt, grey in color sweat pants, white in color tank top, a necklace made of red in color beads and a watch with what appears to be a black in color leather band. In another photo you took a photo of yourself and the others willingly posing for the pictures to be taken. All this information corroborates the fact you utilized a cellular phone to capture the photos, as described in the section 11 narrative.
>
> Your contention that the report is false because the phone is not yours phone does not relieve you of the responsibility by the DHO. The DHO finds you are not being truthful. The DHO finds the staff member's statements and observations are more credible and believable than that of yours, as the staff members observations were made strictly in the performance of their duties and they have no reason to make up false accusations. The DHO gave greater weight to the reporting officer positively identifying you in your photos. Thus, the DHO determined your claim of the report being false was without merit.
>
> \*\*\*Note: To possess means to have on one's person or under one's dominion or control.
>
> Therefore, based on the greater weight of evidence, the DHO determined you did not present sufficient evidence to refute the charge. Consequently, the DHO finds you committed prohibited act Possession of a Hazardous Tool (Cell Phone), code 108.

(*Id.*) The DHO then issued the following sanctions: (1) revocation of forty-one days of good conduct time; (2) a monetary fine of $250.00; and (3) the loss of five hundred and seventy-four days of commissary privileges. (*Id.* at 28.) Petitioner received the finalized DHO report on October 7, 2019. (*Id.* at 29.)

Petitioner appealed the DHO's decision to the BOP's Regional and Central Offices, challenging aspects of the reports, emphasizing that the phone "was not found in [his] possession," and alleging that the DHO told him to "get out" when he tried to explain that he did not take the photos. (ECF No. 4-1, at 9–14.) Petitioner received a denial at each level of appeal. (*Id.*)

4

In May of 2020, Petitioner filed the instant Petition, arguing that the BOP violated his due process rights. Respondent filed an Answer opposing relief, (ECF No. 4), and Petitioner filed a Reply, (ECF No. 5). In terms of relief, Petitioner seeks, among other things, the restoration of his good conduct time and the return of his $250.00 fine. (ECF No. 1, at 9.)

## II.     STANDARD OF REVIEW

Courts hold *pro se* pleadings to less stringent standards than more formal pleadings drafted by lawyers. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Courts must construe *pro se* habeas petitions and any supporting submissions liberally and with a measure of tolerance. *See Royce v. Hahn*, 151 F.3d 116, 118 (3d Cir. 1998).

If a court does not dismiss the petition at the screening stage, the court "must review the answer, any transcripts and records . . . to determine whether" the matter warrants an evidentiary hearing. Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts (made applicable to proceedings under § 2241 by Rule 1(b)). "Whether to order a hearing is within the sound discretion of the trial court," and depends on whether the hearing "would have the potential to advance the petitioner's claim." *Campbell v. Vaughn*, 209 F.3d 280, 287 (3d Cir. 2000); *States v. Friedland*, 879 F. Supp. 420, 434 (D.N.J. 1995) (applying the § 2255 hearing standard to a § 2241 petition), *aff'd*, 83 F.3d 1531 (3d Cir. 1996).

Where a petitioner fails to identify evidence outside the record that would support or "otherwise . . . explain how . . . an evidentiary hearing" would advance his claim, a court is within its discretion to deny an evidentiary hearing. *Campbell*, 209 F.3d at 287. In exercising that discretion, a court must accept the truth of a petitioner's factual allegations unless the record shows that they are clearly frivolous. *Friedland*, 879 F. Supp. at 434; *c.f. United States v. Tolliver*, 800 F.3d 138, 141 (3d Cir. 2015).

### III. JURISDICTION

Under 28 U.S.C. § 2241(c), habeas jurisdiction "shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The federal habeas statute requires that the petitioner be in custody "under the conviction or sentence under attack at the time" he files his petition. *Lee v. Stickman*, 357 F.3d 338, 342 (3d Cir. 2004) (quoting *Maleng v. Cook*, 490 U.S. 488, 490–91 (1989)).

This Court has subject matter jurisdiction under § 2241 to consider Petitioner's challenges to his custody because he challenges the loss of good conduct time on constitutional grounds, and he was incarcerated in New Jersey at the time he filed the Petition. *See Woodall v. Fed. Bureau of Prisons*, 432 F.3d 235, 242–44 (3d Cir. 2005).

As to Petitioner's claims for the return of his $250.00 fine, however, this Court lacks jurisdiction over such claims. "Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus; requests for relief turning on circumstances of confinement may be presented in a § 1983 [or *Bivens*] action." *Muhammad v. Close*, 540 U.S. 749, 750 (2004) (citation omitted). "[U]nless the claim would fall within the 'core of habeas' and require sooner release if resolved in the plaintiff's favor, a prison [related] action . . . is properly brought under § 1983" or a *Bivens* action. *Leamer v. Fauver*, 288 F.3d 532, 542 (3d Cir. 2002).

With those principles in mind, assuming *arguendo* that Petitioner was entitled to the return of the $250.00 fine, it would not result in his sooner release and "would not alter [the length of] his sentence or undo his conviction." *Id.*; *see, e.g.*, *Levi v. Ebbert*, 353 F. App'x 681, 681 (3d Cir. 2009). As a result, he cannot challenge his monetary fine by habeas petition, and this Court lacks jurisdiction to hear such claims. *Leamer*, 288 F.3d at 542; *see, e.g.*, *Levi*, 353 F. App'x at 681.

## IV.     DISCUSSION

Petitioner appears to argue that the BOP violated his rights because: (1) he did not receive proper notice of the charge against him; (2) the DHO was not impartial; and (3) he suffered cruel and unusual punishment due to the lack of proper notice and an impartial tribunal. (ECF No. 1, at 7–8.)  In response, Respondent contends that Petitioner received all the necessary due process protections, and that in any event, there is "some evidence" to support the DHO's findings and decision. (ECF No. 4, at 13–28.)

Under our jurisprudence, before a prisoner may lose good time credits, officials must afford him the following due process protections: (1) a written notice of the charges at least twenty-four hours prior to a hearing; (2) an opportunity to call witnesses and present evidence in his defense; (3) an opportunity to receive assistance from an inmate representative; (4) a written statement of the evidence relied on and the reasons for the disciplinary action; and (5) an appearance before an impartial decision making body. *See Crosby v. Piazza*, 465 F. App'x 168, 171–72 (3d Cir. 2012) (per curiam) (citing *Wolff v. McDonnell,* 418 U.S. 539, 563–71 (1974)).

Additionally, in order to comport with due process, there must be "some evidence in the record" to support a disciplinary officer's findings and decision to revoke good time credits. *Gonzalez v. Hollingsworth*, No. 15-2993, 2016 WL 1732376, at *2 (D.N.J. May 2, 2016) (quoting *Denny v. Schultz*, 708 F.3d 140, 144 (3d Cir. 2013)).  The "some evidence" standard is one of appellate review and is not the same as the "burden of proof in a prison disciplinary proceeding." *Id*.

Indeed, the "some evidence" standard is "minimal and does not require examination of the entire record, an independent assessment of the credibility of the witnesses, or a weighing of the evidence." *Lang v. Sauers*, 529 F. App'x 121, 123 (3d Cir. 2013) (citing *Thompson v. Owens*, 889

7

F.2d 500, 502 (3d Cir. 1989)). Instead, "the relevant inquiry asks whether 'there is any evidence in the record that could support'" the disciplinary official's conclusion. *Id*. (quoting *Superintendent v. Hill*, 472 U.S. 445, 455–56 (1985)).

### A. The Right to Written Notice

With the principles above in mind, under Ground One, Petitioner argues that he did not receive proper written notice of the charges against him. (ECF No. 1, at 8.) He appears to argue that the incident report did not contain "the . . . facts being charged as the prohibited [a]ct," and that Code "108, possession of a hazardous tool as charged [was] not described in" the report. (*Id*.) Petitioner offers no further elaboration.

A review of the incident report reveals that Petitioner is incorrect. The report plainly states that Petitioner was charged with Code 108, possession of a hazardous tool, and describes why the BOP believed he possessed a cell phone. (ECF No. 4-1, at 16 ¶¶ 9–11.) In particular, the report describes how Petitioner posed for several photos and took a selfie, in an obviously restricted area. (*Id*.; *see also* ECF No. 4-1, at 30.)

Petitioner sought to challenge the report in other ways during his administrative appeals but did not include those allegations within his § 2241 Petition. (*Compare* ECF No. 1, at 7–8, *with* ECF No. 4-1, at 9–14.) As a result, it is not necessary for the Court to address those allegations. That said, the Court will briefly address Petitioner's allegations concerning typographical errors in his administrative appeals.

In his appeals, Petitioner emphasized that his incident report listed two different dates, June 16, 2019, and June 17, 2019, as the date that staff became aware of the unauthorized photos. (ECF No. 4-1, at 10, 16.) Additionally, in the DHO report, the date of incident and the date of the incident report stated that June 24, 2019, was the relevant date. (*Id*. at 10, 26.)

8

As a general matter, "[t]ypographical errors such as those . . . do not violate due process." *E.g.*, *Williams v. Warden of FCI McKean*, No. 19-172, 2021 WL 2810052, at *5 (W.D. Pa. July 6, 2021); *Herrera-Peralta v. Ortiz*, No. 20-8958, 2021 WL 2201322, at *4 (D.N.J. June 1, 2021) (finding that an incorrect date did not violate due process where the substance of the report provided sufficient notice); *Crane v. White*, 2020 WL 4347382, at *3 (M.D. Pa. July 29, 2020) (same); *see also Millhouse v. Warden Lewisburg USP*, 785 F. App'x 931, 935 (3d Cir. 2019).

The Court has reviewed the incident and DHO reports and finds that the erroneous references to June 17 and June 24 appear to be mere typographical errors. In the incident report, apart from the sole reference to June 17, there are at least five references to the correct date, June 16, 2019. (ECF No. 4-1, at 16.) For the right to written notice, an incident report is the critical document because it gives a petitioner notice of the charges against him, whereas a DHO report is a post-hearing document that provides a summary of events and the DHO's findings and decisions.

Additionally, Petitioner fails to explain how the typographical errors prejudiced him. He does not allege, for example, that he had an alibi on any particular date. In fact, the date of the incident was not particularly relevant in this case, as it was only the date that the investigator *viewed* the unauthorized photos. In other words, it did not matter when the investigator saw the photos. The critical issue was whether Petitioner posed for photos or took a selfie with a cell phone, at *any* point in time, in an unauthorized area at Fort Dix. As the incident report provided Petitioner with "sufficient notice of the . . . substance" of the charge against him, "there was no due process violation" in the typographical errors. *Herrera-Peralta*, 2021 WL 2201322, at *4. Accordingly, Petitioner is not entitled to habeas relief on this claim.

**B. The Right to an Impartial Decision-Maker**

Next, under Ground Two, Petitioner argues that the DHO "was not impartial." (ECF No. 1, at 8.) Ground Two is largely nonsensical, consisting of legal words and phrases haphazardly stitched together, with almost no factual allegations. (*Id.*) Nor does Petitioner offer any elaboration in his Reply.[3] (ECF No. 5.)

In the prison disciplinary hearing context, the Third Circuit has held that the "requirement of an impartial tribunal prohibits only those officials who have a direct personal or otherwise substantial involvement, such as major participation in a judgmental or decision-making role, in the circumstances underlying the charge." *Speight v. Minor*, 245 F. App'x 213, 217 (3d Cir. 2007) (internal quotation marks omitted). In the absence of a showing that the DHO was "personally or substantially involved in the circumstances underlying [the investigation of the] charge," courts have generally rejected due process challenges based on claims of DHO bias. *See, e.g.*, *Greer v. Hogston*, 288 F. App'x 797, 799 (3d Cir. 2008); *Edwards v. Yates*, No. 15-5780, 2016 WL 6562048, at *9 (D.N.J. Nov. 4, 2016).

---

[3] Rather than expand on his claims or oppose Respondent's arguments, Petitioner's one page Reply argues only that he should receive default judgment, because Respondent allegedly filed his Answer two days late. (ECF No. 5.) Even if Respondent's Answer were two days late, that would not justify the extraordinary action of striking the Answer.

In any event, default judgment is inappropriate in a habeas case for a litany of reasons. *See, e.g.*, *In re West*, 591 F. App'x 52, 54 n.3 (3d Cir. 2015) ("Even if the Government had failed to respond to the § 2255 motion, it does not follow that West is entitled to a default judgment."); *Bermudez v. Reid*, 733 F.2d 18, 21 (2d Cir. 1984) (observing that if district courts were to grant default judgments in habeas cases, "it would be not the defaulting party but the public at large that would be made to suffer, by bearing either the risk of releasing prisoners that in all likelihood were duly convicted, or the costly process of retrying them"); *Garcia v. United States*, No. 19-181, 2019 WL 5788087, at *1 (D.N.J. Nov. 6, 2019). Accordingly, to the extent Petitioner requests default judgment in his Reply, the Court will deny that request.

With those principles in mind, Petitioner alleges that he suffered "discrimination" with no further explanation. (ECF No. 1, at 8.)  This "claim of general of bias" does not amount to "direct personal or otherwise substantial involvement . . . in the circumstances underlying the charge," that could show that the DHO was not impartial. *Lewis v. Canaan*, 664 F. App'x 153, 156 (3d Cir. 2016) (internal quotation marks omitted); *Rodriguez v. Ebbert*, No. 15-1815, 2016 WL 3457175, at *3 (M.D. Pa. June 20, 2016) (finding that a "'generalized critique' of [DHO] impartiality is insufficient to demonstrate the degree of bias necessary to prove a due process violation").  Within the Petition, the only factual allegation in support of this claim is Petitioner's disagreement with the "DHO's adoption of the incident report." (ECF No. 1, at 8.)  Which is insufficient to demonstrate bias.

Even if the Court were to construe the Petition to include allegations from Petitioner's administrative appeals, those allegations were merely speculation and his displeasure with the DHO's reasoning and decisions. (ECF No. 1, at 8.); *see Marshall v. Ortiz*, No. 19-19557, 2022 WL 671511, at *6 (D.N.J. Mar. 7, 2022).  In particular, Petitioner alleged that the DHO was biased because the BOP "could not find the phone" and chose to prosecute him without giving him an opportunity to speak on his own behalf. (ECF No. 4-1, at 10.)

Plaintiff, however, "has failed to present any evidence to support his claim that he was not given an opportunity to make a statement or give testimony," or any evidence to support his theory that the DHO wanted to punish him because the BOP could not find the phone. *Randolph v. McCall*, No. 11-817, 2012 WL 395923, at *6 (D.S.C. Jan. 12, 2012).  Plaintiff cannot "rely on beliefs, conjecture, speculation, or conclusory allegations" to prove his claims. *Id*.; *see also Marshall*, 2022 WL 671511, at *6; *Neal v. United States Penitentiary Lee*, No. 20-295, 2021 WL 4498559, at *5 (W.D. Va. Sept. 28, 2021) (requiring evidence of ulterior motive); *Hewlett v. Kallis*,

No. 19-1123, 2020 WL 1359679, at *11 (D. Minn. Jan. 7, 2020) (finding that unsubstantiated speculation is not sufficient to establish bias); *Williams v. Warden, FCI Edgefield*, No. 17-CV-00946, 2018 WL 718959, at *2 (D.S.C. Feb. 5, 2018) (finding that petitioner's self-serving affidavit, "containing unsubstantiated speculation," was insufficient to establish bias); *Smith v. Masters*, No. 15-11533, 2017 WL 1064032, at *3 (S.D.W. Va. Feb. 16, 2017).

Contrary to Petitioner's allegations, the DHO report shows that the DHO considered Petitioner's testimony and specifically addressed a number of Petitioner's statements. (ECF No. 4-1, at 27.) In particular, the DHO stated:

> Inmate Saldana . . . stated the incident report was not true.
>
> "I am not guilty, the cellphone wasn't mine."
>
> . . . .
>
> In addition, the DHO considered your testimony during the DHO hearing in which you deny the incident report was true. You stated, "I didn't have a phone." You deny being in possession of a cell phone while at FCI Fort Dix as described in section 11 by the reporting staff member. You were unable to provide the DHO with any significant/reliable witnesses or evidence to corroborate your claim of not possessing the cell phone.
>
> . . . .
>
> Your contention that the report is false because the phone is not yours phone does not relieve you of the responsibility by the DHO. The DHO finds you are not being truthful.

(*Id*. at 26–27.)

Furthermore, within the Petition, Petitioner fails to explain what additional testimony he would have provided or how the absence of that testimony prejudiced his case. In one of his administrative appeals, he alleged that he would have explained that he "didn't take the photos," but offered no further elaboration (*Id*. at 10.)

12

Based on the Court's independent review of the photos, the Court finds that this vague testimony would not have materially affected the DHO's decision. (ECF No. 4-1, at 30). First, although Petitioner did not personally take photos two and three, he appears to be posing for those photos, and thus, exercised some "dominion or control" over the phone, *i.e.*, by asking or allowing someone to take a photo of him. More critically, the selfie indicates that Petitioner was, at some point, in possession of a cell phone[4] in Fort Dix. (*Id.*) Even if he did not personally take the photo that appears to be a selfie, his incredibly close proximity to the phone shows that he had some "dominion or control" over the phone. (*Id.*)

For all those reasons, Petitioner has failed to demonstrate that the DHO was not impartial. Accordingly, Petitioner is not entitled to habeas relief on this claim.

**C. Eighth Amendment Claim**

Next, under Ground Three, Petitioner appears to argue that because of the alleged constitutional violations under Grounds One and Two, Petitioner was subjected to cruel and unusual punishment under the Eighth Amendment.[5] (ECF No. 1, at 8.) As discussed above, Petitioner has failed to demonstrate that the BOP violated his constitutional rights under Grounds One and Two. Accordingly, as the premise for Petitioner's argument lacks merit, he is not entitled to habeas relief on this claim.

---

[4] A digital camera could have theoretically taken the photos, but Petitioner conceded that it was a cell phone. (ECF No. 4-1, at 10 ("To my knowledge, the phone that took these photos has not been recovered and . . . WAS NOT found in my possession."); ECF No. 4-1, at 26 ("[T]he cellphone wasn't mine.").)

[5] Petitioner references the Eighth and Fourteenth Amendments, but as a convicted and sentenced federal prisoner, the Eighth Amendment governs his claims of cruel and unusual punishment. *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003).

To the extent that Petitioner contends that the loss of good time credits or commissary privileges independently constitutes cruel and unusual punishment, the Court disagrees. The relevant inquiry under the Eighth Amendment is whether the alleged deprivation was "sufficiently serious," and whether the BOP deprived the inmate of the "minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)); *Schreane v. Seana*, 506 F. App'x 120, 124 (3d Cir. 2012) (finding that the loss of good time credits does not constitute cruel and unusual punishment). "An inmate must demonstrate that he is incarcerated under conditions posing a substantial risk of serious harm and that prison officials demonstrated deliberate indifference to his health or safety." *Schreane*, 506 F. App'x at 124 (internal quotation marks omitted). In the present case, Petitioner does not allege that he "suffer[ed] any pain or interference with his health or basic needs." *Id*. Accordingly, for that reason as well, Petitioner is not entitled to habeas relief on this claim. *Id*.

### D. Sufficiency of the Evidence

Petitioner does not directly challenge the sufficiency of the evidence in his Petition, but the Court will briefly address the issue. Unlike a DHO hearing, this Court need not decide whether the "greater weight of the evidence" supports any particular conclusion. Instead, when reviewing a DHO's decision resulting in the loss of good time credits, federal courts will uphold that decision as long as there was "some evidence" to support the DHO's findings and decision. *Hill*, 472 U.S. at 455–56. As mentioned above, the "some evidence" standard is one of appellate review and it is not the same as the "burden of proof in a prison disciplinary proceeding." *Gonzalez*, 2016 WL 1732376, at *2 (quoting *Denny*, 708 F.3d at 144).

The standard is "minimal and does not require examination of the entire record, an independent assessment of the credibility of the witnesses, or a weighing of the evidence." *Lang*,

14

529 F. App'x at 123 (citing *Thompson*, 889 F.2d at 502). Instead, district courts need only ask whether "there is any evidence in the record that could support" the disciplinary official's conclusion. *Id.* (quoting *Hill*, 472 U.S. at 455–56) (internal quotation marks omitted).

With that minimal standard in mind, there is plainly "some evidence" to support the DHO's findings and decision in this case. The DHO could have reasonably concluded that one of the photos in this case was a selfie of Petitioner, and that based on the contents of the selfie, concluded that it was taken in an unauthorized area of Fort Dix. (ECF No. 4-1, at 30.) Petitioner conceded that the pictures were taken with a cell phone. (*Id.* at 26–27.) In turn, the DHO could have reasonably inferred that Petitioner possessed a cell phone, in an unauthorized area, in Fort Dix. As a result, this evidence is sufficient to meet the "some evidence" standard. Accordingly, assuming Petitioner challenges the sufficiency of the evidence at his DHO hearing, he is not entitled to habeas relief on this claim.

## V.  CONCLUSION

For the foregoing reasons, the Court will deny the Petition, dismiss Petitioner's claims for monetary relief for lack of jurisdiction, and deny Petitioner's request for default judgment. An appropriate Order follows.

DATED: April 21, 2022

/s/ Christine P. O'Hearn
**Christine P. O'Hearn**
**United States District Judge**